UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUNKIN' DONUTS FRANCHISING LLC, *et al.,*

        Plaintiffs,

v.                                                       Case No. 10-13606
                                                   Honorable Denise Page Hood

OZA BROTHERS, INC., *et al.*,

        Defendants.

_____/

**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT, AND MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND SETTING STATUS CONFERENCE**

**I.    INTRODUCTION**

This matter involves the termination and enforcement of a franchise agreement. Now before the Court is Dunkin' Donuts' Motion for Leave to File Second Amended Complaint [Docket No. 51, filed March 27, 2012], Motion for a Preliminary Injunction [Docket No. 53, filed April 3, 2012], and Motion for Summary Judgment [Docket No. 40, filed October 24, 2011]. Also before the Court is Defendants' Motion for Summary Judgment [Docket No. 38, filed October 24, 2011]. All matters were fully briefed and oral arguments were heard on March 12, 2012.

For the reasons stated below, Plaintiffs' Motion for Leave to File, Motion for Preliminary Injunction, and Motion for Summary Judgment are GRANTED. Defendants' Motion for Summary Judgment is DENIED.

**II.    BACKGROUND**

    **A.    Procedural Background**

This action was filed on September 10, 2010 in this Court. Dunkin' Donuts (Dunkin') alleges breach of the franchise agreement, breach of the lease, trademark infringement, unfair competition, and trade dress infringement. Among other relief, Dunkin' requested exemplary or punitive damages. On October 12, 2010, Defendants filed a counterclaim alleging fraud, innocent misrepresentation, breach of contract, promissory estoppel, unjust enrichment, and defamation *per se*. Defendants also requested, amongst other relief, exemplary damages. Defendants filed an amended counterclaim on November 22, 2010 adding a violation of Massachusetts General Laws Chapter 93A §2.

Defendants and Dunkin' filed cross motions for summary judgment on October 24, 2011. On November 14, 2011, Dunkin' filed their motion for leave to file first amended complaint deleting their request for punitive and exemplary damages. The Court granted leave for Dunkin' to file their first amended complaint on January 6, 2012.

The Court considered oral arguments on Defendants' and Dunkin's' Cross Motions for Summary Judgment on March 12, 2012 and took the matter under advisement.

**B.      Factual Background[1]**

Dunkin' Donuts Franchising LLC, DD IP Holder LLC, Baskin-Robbins Franchising LLC, and BR IP Holder LLC are Delaware limited liability companies (collectively Dunkin'). Dunkin' Donuts and Baskin-Robbins allow franchisees to operate joint units. Defendant Oza Brothers, Inc. is a Michigan corporation and the owner of a Dunkin'/Baskin-Robbins combo store in Royal Oak, Michigan. Defendants Jayantibhai, Rajan, and Paresh Oza are Michigan residents and shareholders of the Oza Brothers, Inc.

Dunkin' and Oza Brothers entered into a Franchise Agreement dated June 30, 2008 for a

---

[1] Defendants also provide a summary of facts. However, Defendants make only four citations to the record, which do not wholly support their version of the facts.

combo store in Royal Oak, Michigan. The individual Defendants all signed the Franchise Agreement. Massachusetts' law governs the Franchise Agreement.

Defendants agreed to pay a continuing franchise fee of 5.9 percent of gross sales. Defendants also agreed to keep business records, submit monthly profit and loss statements, and submit additional documents if required. Section 7.1 of the Franchise Agreement requires Dunkin' to "comply with all civil and criminal laws…pertaining to the occupancy, operation, and maintenance of the Store and Premises, including those related to …taxation." Section 14.0.0.3 provides that the Defendants are in default of the Franchise Agreements if the "owners commit a felony or crime involving moral turpitude, or any other crime or offense that is injurious to either System or the goodwill enjoyed by our Propriety Marks, regardless of whether you are prosecuted or convicted." Section 14.2 does not allow a cure period if Defendants default on sections 14.0.2 through 14.0.6, intentionally underreport sales, or commit a fraud with respect to the Franchise Agreement. Otherwise, Defendants are allowed a 30-day period to cure for other breaches of the Franchise Agreement. Upon termination of the Franchise Agreement, Defendants would be required to stop using all trademarks and selling products like Dunkin' for two years within five miles of a Dunkin' Donuts or Baskin-Robbins store.

Under the Franchise Agreement, Defendants are required to submit approval before making wholesales. Such sales are subject to a franchise fee. All sales must be entered at the time they are made, regardless of when paid.

Dunkin' began investigating Defendants after receiving a tip from a former employee that Defendants were not reporting wholesales made to auto dealers. Dunkin' requested documents from the auto dealers and after examining them discovered that checks were deposited into a corporate account. Corporate bank records showed that bank deposits exceeded corporate sales

by approximately $70,000 from September 2008 until December 2008 and in 2009. In February through April 2011, deposits continued to exceed reported sales.

Rajan Oza indicated that sales were rung into the cash register on a monthly basis when the checks were received.[2] When interviewed on two separate occasions regarding why there were no large transactions rung into the cash register, Rajan Oza indicated that he was not sure if the dealership sales were reported to Dunkin'. At his deposition, Rajan Oza testified that Richard Klucka was responsible for reporting and ringing in all dealership sales. Three former managers testified that the dealership checks were given to Rajan Oza and that they had never seen him ring the dealership checks into the cash register.

Defendants' tax returns showed an increase in loans to shareholders for the tax years of 2008—$2,428 to 275,332—2009—$275,332 to 312,816—2010—$312,816 to 369,101. Raj Mehta, Defendants' accountant, admitted that there was no supporting documentation for the entries. Defendants admitted that they had no supporting documentation for the loans and no knowledge as to whether or not the loans were actually paid. In addition, state sales tax was deducted from gross sales and the net of sales tax was reported as gross sales on Defendants' federal tax returns in 2008, 2009, and 2010. There were also other deductions that the accountant could not support with documentation.

On April 1, 2010, Dunkin' requested by letter that Defendants produce records, including tax returns, weekly payroll registers, and monthly corporate bank account statements. On May 4, 2010, Dunkin' sent Defendants a notice of default and to cure, requiring documents that had not been produced with the April 1st request.

### III.   LAW & ANALYSIS

    **A.   Motion to Amend Complaint**

---

[2] The Franchise Agreement requires sales to be rung into the cash register when they are made.

Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course prior to service of a responsive pleading or within twenty days of serving its pleading if no responsive pleading is required. "Otherwise a party may amend the party's pleadings only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a)(2). The trial court has discretion to allow an amendment. *See General Electric Co. v. Sargent & Lundy*, 916 F. 2d 1119, 1130 (6th Cir. 1990). "In evaluating the interests of justice, courts consider several factors, including undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Coe v. Bell,* 161 F.3d 320, 341 (6th Cir. 1988). An amendment is futile if it would not survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.,* 203 f.3d 417, 420 (6th Cir. 2000). Where an amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier. *Wade v. Knowville Utils. Bd.,* 259 F.3d 452, 459 (6th Cir. 2001).

Dunkin' seeks the Court's leave to file their second amended complaint. Dunkin's' second amended complaint will not add any new claims to the complaint but rather add Defendants' alleged failure to remit the rent and other fees as a separate basis for termination of the Franchise Agreement. Dunkin' contends that Defendants have failed to pay rent and fees for several months despite receiving three notices of default and cure. Dunkin' provided Defendants with a Supplemental Notice of Termination on March 22, 2012 and filed the present motion on March 27, 2012. Defendants ask that the Court deny Dunkin's' Motion to Amend because leave was sought in bad faith, this matter is already at the summary judgment stage, and Dunkin's' claims regarding the rent are more appropriate for a summary eviction proceeding in State court.

Defendants have not demonstrated with any level of clarity how Dunkin's' request to amend was sought in bad faith nor cited any authority for its contention that its new claims should be part of a summary eviction proceeding rather than before this Court.

The Court finds no reason to conclude that Dunkin's' request for leave to amend was made in bad faith. The present request was filed within five days of Dunkin' providing a Supplemental Notice of Termination. According to Dunkin', Defendants have not paid rent or related fees for *several* months. Dunkin' alleges that this action in of itself is a breach of the Franchise Agreement, which is part of the same facts and occurrences that first brought the parties before the Court. The Court has supplemental jurisdiction over these matters. *See* 28 U.S.C. § 1367. Further, the Court does not find that Dunkin's' claims would be futile. Dunkin's' Motion for Leave to File Second Amended Complaint is granted.

    **B.**    **Motion for Summary Judgment**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall be granted if the movant shows there are no genuine disputes as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The movant has the burden of showing that summary judgment is appropriate. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Further, the court must consider evidence in the light most favorable to the nonmoving party. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). Summary judgment will "be granted against a party, who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corporation v. Catrett*, 477 U.S. 317, 391 (1986). A material fact is genuine, and therefore the case is not appropriate for summary judgment, if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 248 (1986).

### 1. Waiver of Rights pursuant to Franchise Agreement

Defendants argue that the case should be dismissed in its entirety because Dunkin' has violated the Franchise Agreement by requesting exemplary and punitive damages in their prayer for relief. Dunkin' contends that Defendants waived this argument when they also included exemplary damages in their prayer for relief and continued litigation without objection.

Paragraph 15.0 of the Franchise Agreement states in relevant part that the parties "waive and agree not to include in any pleading or arbitration demand . . . claims for punitive, multiple, or exemplary damages. If any pleading is filed that contains any of these claims . . . then the pleading shall be dismissed with prejudice, leaving the pleading party to its arbitration remedy." Dunkin' initially filed this action requesting punitive or exemplary damages. Instead of invoking their right to have the action dismissed from the onset and proceed to arbitration, Defendants filed a counterclaim also asking for exemplary damages. The Court granted Dunkin's' leave to amend their Complaint to delete any reference to punitive and exemplary damages. Defendants waived their objection to this contract provision when it engaged in the same behavior by also requesting punitive and exemplary damages in its Answer. The Court deems Defendants' objection waived and will proceed accordingly.

### 2. Underreporting of Gross Sales

Dunkin' argues that there is no genuine issue of material fact that Defendants underreported gross sales in violation of the Franchise Agreement. Defendants contend that Dunkin' failed to give Defendants an opportunity to cure. Defendants argue that Dunkin' may only terminate the Franchise Agreement without first providing an opportunity to cure if the underreporting of sales was intentional. Defendants argue that Dunkin' has no evidence that the underreporting was intentional and whether the unintentional underreporting of sales was

7

material is a question of fact.

Massachusetts' law provides that "a material breach of contract by one party excuses the other party from performance as a matter of law." *Dunkin' Donuts, Inc. v. Gav-Stra Donuts, Inc*, 139 F.Supp.2d 147, 155 (D. Mass. 2001). There is material breach when there is "a breach of 'an essential and inducing feature of the contract[]." *Lease-It, Inc. v. Massachusetts Port Authority*, 33 Mass.App.Ct. 391, 396 (1992) (quoting *Bucholz v. Green Bros. Co.,* 272 Mass. 49, 52 (1930)) (finding a material breach of a contract when Defendants' sole obligation under the contract was to pay concession and rental fees); *see also Gav-Stra Donuts*, 139 F.Supp.2d at 155 ("In evaluating a breach of contract, the Court must determine 'whether the Defendants' breach entitled the plaintiff merely to recovery for that breach while continuing to abide by the contract, or was so material in all the circumstances as to justify the plaintiff in throwing the contract over and suing for the total breach'); *Aerostatic Engineering Corp. v. Szczawinski*, 1 Mass.App.Ct. 141, 145 (1973) (finding that the Defendants' breach went to "the root of the contract thus entitling the plaintiff to terminate"). Whether a breach is material or immaterial is typically a question for the jury. *Lease-It*, 33 Mass.App.Ct. at 396. The Franchise Agreement allows Dunkin' to terminate the agreement in the event that the franchisee intentionally underreports gross sales. Other courts have agreed that the underreporting of gross sales is a material breach of the franchise agreement entitling the plaintiff to terminate the contract. *See Dunkin' Donuts of America, Inc. v. Middleton Donut Corp.*, 495 A.2d 66 (N.J. 1985); *Baskin-Robbins, Inc. v. Taj California, Inc.*, 2003 U.S. Dist. LEXIS 19946 (C.D. Cal. 2003); *Dunkin' Donuts Inc. v. Taseski*, 47 F.Supp.2d 867 (E.D. Mich. 1999); *The Southland Corp. v. Mir*, 748 F.Supp. 969 (E.D.N.Y. 1990).

In support of its argument that the underreporting was intentional, Dunkin' points the

Court to the testimony of three former managers of Defendants' Dunkin' Donuts store. All three former managers were instructed to give the dealership checks to either Rajan or Jay Oza. The managers further testified that they never saw either Rajan or Jay Oza ring the dealership checks into the cash register. Rajan Oza was questioned by a Dunkin' Donuts representative on two separate occasions. He first testified that the sales were entered once per month. Records showed that, contrary to Defendants' assertion that checks were deposited monthly, there were no large monthly deposits. Rajan Oza later admitted that he was not sure whether the sales were reported to Dunkin'. All funds were deposited into the corporate bank account.

Dunkin' further points to the presence of "Shareholder Loans," which grew in size yearly. The Defendants' accountant testified that there was no proof that shareholder loans were made and that the shareholder accounting category was to balance the books. Dunkin' reports that Defendants testified that there were no other sources of income.

Defendants have failed to present any evidence, beyond conclusory statements, to dispute Dunkin's' argument that Defendants intentionally underreported sales. Defendants had sole control over the dealership checks as indicated by their employees and Defendants have not provided any evidence to dispute this fact. The fact that the checks were deposited into the corporate account is irrelevant to the issue of whether the funds were reported to Dunkin'. Defendants testified that the checks were reported monthly but the record does not support this contention. Depositing the funds into the corporate accounts tends to show intention to underreport sales rather than sloppiness and poor judgment, as Defendants would like the Court to find. Jay Oza testified to providing some loans to the business. However, Defendants have not provided any evidence to show that these loans were actually made.

Defendants' testimony that the dealership checks were reported monthly, coupled with

evidence showing that Defendants had sole control over the checks and that no large deposits were made tends to show that there was intentional underreporting of sales. The Franchise Agreement allows Dunkin' to terminate upon the intentional underreporting of sales. A reasonable jury would find that Defendants intentionally underreported sales. There is no genuine issue of material fact and Dunkin' is entitled to terminate the Franchise Agreement based on Defendants' failure to report all sales.

### 3. Filing of Inaccurate Corporate and Personal Tax Returns

The Franchise Agreement provides that Defendants "agree to comply with all civil and criminal laws . . . pertaining to the occupancy, operation, and maintenance of the Store and Premises, including those relating to . . . taxation." Dunkin' argues that it is entitled to terminate the Franchise Agreement because Defendants breached the Franchise Agreement by not obeying the applicable tax provisions. Specifically, Dunkin' contends that Defendants violated 26 U.S.C. § 7201 and 7206.

Section 7206(1) of the Internal Revenue Tax Code makes it a felony to "[w]illfully make[] and subscribe[] any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which [the declarant] does not believe to be true and correct as to every material matter." The existence of a tax deficiency, the amount of unreported income or intent to evade taxes is irrelevant. *United States v. Tarwater*, 308 F.3d 494, 504 (6th Cir. 2002). A matter is material "if it has a natural tendency to influence, or is capable of influencing or affecting, the ability of the IRS to audit or verify the accuracy of a tax return." *Id.* at 505. "[A]ny failure to report income is material." *Id.* (quoting *United States v. Holland,* 880 F.2d 1091, 1096 (9th Cir.1989)). Whether a matter is material is a question of law. *United States v. Fawaz*, 881 F.2d 259, 261 (6th Cir. 1989).

26 U.S.C. § 7201 provides that "[a]ny person who willfully attempts in any manner to evade or defeat any tax" is guilty of a felony. Tax evasion requires proof of (1) willfulness, (2) the existence of a tax deficiency, and (3) an affirmative act constituting an attempt at or actual evasion of taxes. *Sansone v. United States*, 380 U.S. 343, 351 (1965). An affirmative act may be established by an act that misleads such as double setting books, false entries, or concealing assets. *United States v. Gross*, 626 F.3d 289 (6th Cir. 2010). For both statutes, willfulness requires proof that "the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991). Willfulness may be proven by circumstantial evidence. *United States v. Ashfield*, 735 F.2d 101, 105 (3d Cir. 1984).

There is no question that the act of underreporting income and designating it as shareholder loans would be a material matter for the purpose of section 7206(1) because such information would influence the IRS' ability to determine income on a tax return. As stated before, the question is whether these loans were actually made. Although Dunkin' argues that no shareholder loans were made, Jay Oza testified to giving money to the business as needed. Defendants have not pointed to one piece of evidence that would support Jay Oza's deposition testimony. The accountant testified that the loans were a filler category to balance the books and that he could not provide evidence that the loans had been made. It does not appear that the loans were ever made but rather a balancing category to cover up Defendants' intentional underreporting of profits. This is sufficient to show willfulness for section 7206.

Furthermore, there is no question as to sales tax. Raj Mehta, the accountant, testified that sales tax was deducted twice. The accountant testified that he relied on the information provided by Defendants. Defendants signed the tax returns. The act of signing tax returns based on

11

underreported income infers willfulness on the part of Defendants. This coupled with the fact that these methods were used for three years confirms that Defendants engaged in willful behavior. The elements for section 7206(1) are satisfied.

As to tax evasion under section 7201, the act of deducting sales tax twice in order to underestimate income for tax purposes satisfies the elements of tax evasion. As stated above, willfulness can be inferred from the act of providing inaccurate documents in order to underestimate income. Defendants made an affirmative act by providing false documents, signing inaccurate returns, filing inaccurate returns, and doing so for three years. Defendants argue that there has been no tax authority to audit them or indicate that any deficiency exists. However, whether Defendants are actually prosecuted is irrelevant to whether there is a tax deficiency. The Franchise Agreement does not require Dunkin' to wait until Defendants are prosecuted before terminating the Franchise Agreement. Defendants' act of underreporting income to the IRS and, therefore, failure to obey applicable tax provisions is sufficient to constitute a breach of the Franchise Agreement.

Defendants argue that, absent fraud, Dunkin' cannot terminate the Franchise Agreement without first providing an opportunity to cure. It is apparent that the act of tax evasion or falsely subscribing to a document under threat of perjury would constitute fraud. *See Baskin-Robbins, Inc. v. Taj Cal., Inc.,* 2003 U.S. Dist. LEXIS 19946 (C.D. Cal. Sept. 9, 2003) ("Terminations of franchise agreements for a franchisee's failure to obey all applicable laws and engaging in conduct injurious and prejudicial to the franchisor's goodwill in the operation of the franchise are predicated on the principle that the 'good faith belief of the franchisor that the franchisee is untrustworthy or engages in fraudulent practices undermines the entire franchise relationship'") (quoting *Humboldt Oil Co., v. Exxon Co.*, 695 F.2d 386, 389 (9th Cir. 1982)). Dunkin' is not

required to allow Defendants an opportunity to cure when they are underreporting income to both Dunkin' and to the IRS.

The Court finds that there is no genuine issue of material fact as to Defendants' failure to obey applicable tax provisions. Dunkin' is entitled to summary judgment as a matter of law.

### 4. Post-Termination Obligations

Dunkin' argues and Defendants do not contest that Defendants' continued use of Dunkin's' trademarks, trade name, and trade dress are acts of unfair competition in violation of the Lanham Act. Because of Defendants' failure to report all profits and obey applicable tax laws, Defendants are not entitled to continued use of Dunkin's propriety marks. Defendants continued use of Dunkin's propriety marks after termination of the Franchise Agreement is a violation of section 43(a) of the Lanham Act. *See S&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375-76 (3d Cir. 1992) (finding that the continued unauthorized use of a trademark was likely to cause confusion); *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville*, 670 F.2d 642, 646–47 (6th Cir. 1982); *Little Caesar Enterprises Inc. v. R-J-L Foods, Inc.*, 796 F.Supp. 1026, 1034–35 (E.D. Mich. 1992). Defendants are ordered to cease from using all trademarks, trade name, and trade dress. The Court further requires Defendants to comply with all other post-termination obligations, including all restriction covenants and payment of fees. Defendants are directed to submit an accounting of all underreported sales to determine unpaid royalties.

### 5. Defendants' Counterclaims

Dunkin' contends that it is entitled to summary judgment as to Defendants' counterclaims. Defendants do not provide any argument in either their motion for summary judgment or their response to Dunkin's' motion for summary judgment to even suggest any

disagreement. It appears that Defendants concede that their counterclaims should be dismissed as a matter of law. Accordingly, the Court dismisses Defendants' counterclaims for the reasons enumerated in Dunkin's' motion for summary judgment.

### C. Motion for Preliminary Injunction

The Court must balance and consider four factors when determining the appropriateness of a preliminary injunction pursuant to Federal Rule of Civil Procedure 65: (1) the likelihood of the Plainitffs' success on the merits; (2) whether plaintiff will suffer irreparable injury without the injunction; (3) the harm to other which will occur if the injunction is granted; and 4) whether the injunction would serve the public interest. *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001); *In re Eagle-Pitcher Industries, Inc.*, 963 F.2d 855, 858 (6th Cir. 1992); *Lucero v. Detroit Pub. Sch.*, 160 F. Supp.2d 767, 779 (E.D. Mich. 2001). Specific findings must be made as to each factor unless fewer factors would be dispositive of the issues. *Bonnell*, 241 F.3d at 809; *Lucero*, 160 F. Supp.2d at 779. A finding that the movant has not established a strong probability of success on the merits will not preclude a court from exercising its discretion to issue a preliminary injunction, where the movant has at minimum shown serious harm, which decidedly outweighs any potential harm to the defendant if the injunction is issued. *Gaston Drugs, Inc., v. Metropolitan Life Ins., Co.*, 823 F.2d 984, 988, n.2 (6th Cir. 1987); *Lucero*, 160 F. Supp.2d at 779. The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met. *Washington*, 35 F.3d at 1099. No single factor will be determinative as to the appropriateness of equitable relief. *In re DeLorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir. 1985).

A preliminary injunction is meant to preserve the relative positions of the parties pending a resolution on the merits. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). The plaintiff

14

must demonstrate specific harm and the likelihood of success on the merits. *Leary v. Daeschner,* 228 F.3d 729, 739 (6th Cir. 2000). A showing of a 'possibility' of success on the merits is insufficient. *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987). Rather, at a minimum, the movant must show "serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *In re Delorean*, 755 F.2d at 1229.

### 1. Likelihood of Success

It is apparent that Dunkin' is able to show a strong likelihood of success on the merits. Dunkin' further argues that Defendants have failed to pay rent as required by the Franchise Agreement and have failed to cure the deficiency despite notices to cure. As of March 29, 2012, Defendants owed more than $19,000 in rent and fees. In addition to Defendants underreporting sales and filing inaccurate tax returns, Defendants' failure to pay rent alone is sufficient for immediate termination under the Franchise Agreement. The Court finds that Dunkin' has shown a likelihood of success on the merits.

### 2. Irreparable Harm

Harm is not irreparable if it can be fully compensated by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). However, in trademark cases, irreparable harm is generally presumed on a showing of likelihood of confusion. *Express Mortgage Brokers Inc., v. Simpson Mortgage, Inc.*, 31 U.S.P.Q.2d 1371 (E.D. Mich. 1994). Injunction is inappropriate if there is an adequate remedy at law. *Gilley v. United States*, 649 F.2d 449, 454 (6th Cir. 1981). Loss of good will, client trust, confidence and confidentiality and competitive advantage constitute irreparable harm for which there is no adequate remedy at law. *Basicomputer*, 973 F.2d at 512. Defendants continue to use Dunkin's trademarks and trade dress without

authorization. The harm to Dunkin' with Defendants' continued unauthorized use of its trademarks and dress cannot be compensated. The Court finds that irreparable harm balances in favor of Dunkin'.

### 3. Balance of Harm

Although Defendants will lose their business, it is Defendants' own wrongdoing that brought them before this Court. Defendants have materially breached their contract by intentionally underreporting sales, failing to pay taxes, and failing to pay rent and fees. The balance of harm weighs in favor of Dunkin'.

### 4. Public Interest

The public interest would be served by an injunction because it would decrease the likelihood that the public would be confused that Defendants are an authorized franchisee. Dunkin's' Motion for Preliminary Injunction is granted.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment **[Docket No. 38, filed October 24, 2011]** is **DENIED**.

**IT IS FURTHER ORDERED** that Dunkin's' Motion for Summary Judgment **[Docket No. 40, filed October 24, 2011]** is **GRANTED**.

**IT IS FURTHER ORDERED** that Dunkin's' Motion for a Preliminary Injunction **[Docket No. 53, filed April 3, 2012]** is **GRANTED**.

**IT IS FURTHER ORDERED** that Dunkin's' Motion for Leave to File Second Amended Complaint **[Docket No. 51, filed March 27, 2012]** is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties will appear before the Court for a status

conference on **Tuesday, November 6, 2012, 2:00 p.m.**

Dated:  September 28, 2012    s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, Friday, September 28, 2012, by electronic and/or ordinary mail.

s/LaShawn Saulsberry
Case Manager